FILED
2010 Jun-07 AM 10:13
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHWESTERN DIVISION

| | |
|---|---|
| PRIVATE CAPITAL GROUP, INC., a Utah corporation, NMB INVESTMENTS, INC., a corporation, MICHAEL ROBINSON, an individual, JARED and BURGANDY RUPP, a married couple, JOSHUA and JALEE SCOTT, a married couple, S & K FAMILY LIMITED PARTNERSHIP, a partnership, ROBERT and VICKIE NELSON, a married couple, RONALD and GAYLE BALL, a married couple, SANDY WALTERS, an individual, DEL RIO INVESTMENTS, a company, MARK AMAKASU, an individual, BRADLEY and LESLIE CALL, a married couple, BRYAN and JANA CALL, a married couple, MICHAEL and JULITA GUILLEN, a married couple, JULIE JOHNSON, an individual, CRAIG and MICHELLE LABRUM, a married couple, SHANE and CAROL LAMB, a married couple, BETH BLACK, an individual, AQULILA VENTURES, LLC, a limited liability company, DAVID and AMY BITTER, a married couple, MICHAEL and JAN BUSBY, a married couple, KEVIN and LOU ANN HEATON, a married couple, JAMES and TINA MOORE, a married couple, KAPUA SPROUT, an individual, DAVID and KATHY WALTON, a married couple, PLACITAS GOLD, LLC, a limited liability company, JAMES and ELIZABETH KNIGHT, a married couple, MICHAEL and LORI DISCHBEIN, a married couple, MARTHA SAPPINGTON, an individual, | Civil Action No: |

1

| | |
|---|---|
| ZANE and LISA WESTOVER, a married couple, FRAZIER FAMILY TRUST, a trust, VIVIAN BROWN, an individual, IRA4SC, LLC, a limited liability company, SNYDER INVESTMENTS, a company, FRANK and DIANE TORRELLI, a married couple, ASH BROOK PROPERTIES, LLC, a limited liability company, CALL AUTO ENTERPRISES, INC., a corporation,<br><br>Plaintiffs,<br><br>vs.<br><br>BRAL HOLDINGS, LLC, a Georgia limited liability company; DAVID R. BENNETT, an individual; DAVID W. SPENCE, an individual,<br><br>Defendants. | |

COMES NOW the Plaintiffs who make this complaint against the Defendants and request relief as follows:

## PARTIES

1.     Plaintiff PRIVATE CAPITAL GROUP, INC. (hereinafter "PCG"), is the duly appointed and authorized representative and agent for Plaintiffs for all purposes related to this lawsuit and is at all times relevant herein, a Utah corporation organized and existing under the laws of the State of Utah.

2.     Plaintiff NMB INVESTMENTS, INC. is and at all times relevant herein, a Nevada corporation organized and existing under the laws of the State of Nevada.

2

3.      MICHAEL ROBINSON is and at all times relevant herein, was a resident of the State of Utah.

4.      JARED and BURGANDY RUPP are and at all times relevant herein, were residents of the State of Utah.

5.      JOSHUA and JALEE SCOTT are and at all times relevant herein, were residents of the State of Utah.

6.      S & K FAMILY LIMITED PARTNERSHIP is and at all times relevant herein, a Utah limited partnership organized and existing under the laws of the State of Utah.

7.      ROBERT and VICKIE NELSON are and at all times relevant herein, were residents of the State of Utah.

8.      RONALD and GAYLE BALL are and at all times relevant herein, were residents of the State of Utah.

9.      SANDY WALTERS is and at all times relevant herein, was a resident of the State of Arizona.

10.     DEL RIO INVESTMENTS is and at all times relevant herein, a California corporation organized and existing under the laws of the State of California.

11.     MARK AMAKASU is and at all times relevant herein, was a resident of the State of Utah.

12.     BRADLEY and LESLIE CALL are and at all times relevant herein, were residents of the State of Idaho.

13.    BRYAN and JANA CALL are and at all times relevant herein, were residents of the State of Idaho.

14.    MICHAEL and JULITA GUILLEN are and at all times relevant herein, were residents of the State of Hawaii.

15.    JULIE JOHNSON is and at all times relevant herein, was a resident of the State of Utah.

16.    CRAIG and MICHELLE LABRUM are and at all times relevant herein, were residents of the State of Utah.

17.    SHANE and CAROL LAMB are and at all times relevant herein, were residents of the State of Nevada.

18.    BETH BLACK is and at all times relevant herein, was a resident of the State of Utah.

19.    AQULILA VENTURES, LLC, is and at all times relevant herein, a Texas limited liability company organized and existing under the laws of the State of Texas.

20.    DAVID and AMY BITTER are and at all times relevant herein, were residents of the State of Arizona.

21.    MICHAEL and JAN BUSBY are and at all times relevant herein, were residents of the State of California.

22.    KEVIN and LOU ANN HEATON are and at all times relevant herein, were residents of the State of Utah.

4

23.    JAMES and TINA MOORE are and at all times relevant herein, were residents of the State of Utah.

24.    KAPUA SPROUT is and at all times relevant herein, was a resident of the State of Hawaii.

25.    DAVID and KATHY WALTON are and at all times relevant herein, were residents of the State of Utah.

26.    PLACITAS GOLD, LLC, is and at all times relevant herein, a New Mexico limited liability company organized and existing under the laws of the State of New Mexico.

27.    JAMES and ELIZABETH KNIGHT are and at all times relevant herein, were residents of the State of Idaho.

28.    MICHAEL and LORI DISCHBEIN are and at all times relevant herein, were residents of the State of Utah.

29.    MARTHA SAPPINGTON is and at all times relevant herein, was a resident of the State of Wisconsin.

30.    ZANE and LISA WESTOVER are and at all times relevant herein, were residents of the State of Utah.

31.    FRAZIER FAMILY TRUST is and at all times relevant herein, a Nevada trust organized and existing under the laws of the State of Nevada.

32.    VIVIAN BROWN is and at all times relevant herein, was a resident of the State of California.

5

33.    IRA4SC, LLC, is and at all times relevant herein, a California limited liability company organized and existing under the laws of the State of California.

34.    SNYDER INVESTMENTS is and at all times relevant herein, a Utah investment company organized and existing under the laws of the State of Utah.

35.    FRANK and DIANE TORRELLI are and at all times relevant herein, were residents of the State of New York.

36.    ASH BROOK PROPERTIES, LLC, is and at all times relevant herein, a Utah limited liability company organized and existing under the laws of the State of Utah.

37.    CALL AUTO ENTERPRISES, INC. is and at all times relevant herein, an Idaho corporation organized and existing under the laws of the State of Idaho.

38.    BRAL HOLDINGS, LLC, is and at all times relevant herein, a Georgia limited liability company organized and existing under the laws of the State of Georgia.

39.    DAVID R. BENNETT (hereinafter "Bennett") is and at all times relevant herein, was a resident of the State of Alabama.

40.    DAVID W. SPENCE (hereinafter "Spence") is and at all times relevant herein, was a resident of the State of Alabama.

**JURISDICTION AND VENUE**

41.    This action is brought under Alabama state law. These claims are brought under 28 U.S.C. Section 1332 as there exists complete diversity and the amount in controversy exceeds Seventy Five Thousand Dollars ($75,000), exclusive of costs and interest.

42. Venue is proper in this Court under 28 U.S.C. Section 1391 (b) as a substantial part of the events giving rise to the claim took place in this judicial district and Defendants are subject to personal jurisdiction in this judicial district.

## GENERAL ALLEGATIONS

43. On or about December 13, 2007, Defendant Bennett on behalf of BRAL Holdings, LLC, approached PCG with a loan request in the amount of Two Million Dollars ($2,000,000.00).

44. On December 14, 2007, Bennett and PCG executed a Letter of Intent setting forth the terms of a prospective agreement wherein Plaintiffs would lend $2,000,000.00 to Bennett in return collateral in the following three properties: Parcel 1 located at 502 Washington Drive, Muscle Shoals, Alabama 35661; Parcel 2 located at 102 Maryland Street, Tuscumbia, Alabama 35674; and Parcel 3 located at 103 S. Atlanta Avenue, Sheffield, Alabama 35660. See "Bennett LOI" attached as Exhibit 1.

45. In anticipation of such loan, Bennett provided Plaintiffs with a Letter of Intent from NR Glimcher, LLC (hereinafter "Glimcher") setting forth the terms of a prospective agreement wherein Glimcher would purchase Parcel 2 located at 102 Maryland Street from Bennett for $1,400,000.00, giving Bennett ample funds to repay the loan. See "Glimcher LOI" attached as Exhibit 2.

46. At Plaintiffs' request and in anticipation of such a loan, on December 14, 2007, Bennett provided Plaintiffs' with a personal financial statement stating his net worth as $32,341,989.00. See "Bennett Personal Financial Statement" attached as Exhibit 3.

7

47.     In December 2007, Bennett provided Plaintiffs with a recent appraisal of the 502 Washington Drive property valuing the property at $866,600.00, and issued on or about November 2007. See "502 Washington Drive Appraisal" attached as Exhibit 4.

48.     In December 2007, Bennett provided Plaintiffs with a recent appraisal of the 102 Maryland Street property issued on June 12, 2007, valuing the property at $1,400,000.00 and stating that "the appraisers are not aware of any known source of pollution of environmental hazards in the area nor any apparent uses or developments in the area which would adversely affect its marketability" and "no obvious signs of any environmental contamination [were] on the site." See "102 Maryland Street Appraisal" attached as Exhibit 5.

49.     In December 2007, Bennett provided Plaintiffs with a recent appraisal of the 103 S. Atlanta Avenue property issued on May 25, 2004, valuing the property at $1,500,000.00 and which failed to note any environmental issues with the land. See "103 S. Atlanta Avenue Appraisal" attached as Exhibit 6.

50.     With regard to the 103 S. Atlanta Avenue property, Bennett provided Plaintiffs with a copy of a five (5) year lease with Wal-Mart on the property whereby Defendant Bennett claimed to receive income in the amount of $20,000.00 per month in return for Wal-Mart's use of the warehouse. See "Wal-Mart Lease" attached as Exhibit 7.

51.     In reliance on the foregoing, on January 11, 2008, PCG facilitated a loan transaction for and on behalf of Plaintiffs NMB INVESTMENTS, INC., MICHAEL ROBINSON, JARED and BURGANDY RUPP, JOSHUA and JALEE SCOTT, S & K FAMILY LIMITED PARTNERSHIP, ROBERT and VICKIE NELSON, RONALD and GAYLE BALL,

8

SANDY WALTERS, DEL RIO INVESTMENTS, MARK AMAKASU, BRADLEY and LESLIE CALL, BRYAN and JANA CALL, MICHAEL and JULITA GUILLEN, JULIE JOHNSON, CRAIG and MICHELLE LABRUM, SHANE and CAROL LAMB, BETH BLACK, AQULILA VENTURES, LLC, DAVID and AMY BITTER, MICHAEL and JAN BUSBY, KEVIN and LOU ANN HEATON, JAMES and TINA MOORE, KAPUA SPROUT, DAVID and KATHY WALTON, PLACITAS GOLD, LLC, JAMES and ELIZABETH KNIGHT, MICHAEL and LORI DISCHBEIN, MARTHA SAPPINGTON, ZANE and LISA WESTOVER, FRAZIER FAMILY TRUST, VIVIAN BROWN, IRA4SC, LLC, SNYDER INVESTMENTS, FRANK and DIANE TORRELLI, ASH BROOK PROPERTIES, LLC, CALL AUTO ENTERPRISES, INC., (hereinafter collectively referred as "Plaintiffs") wherein Plaintiffs loaned and Defendants BRAL HOLDINGS, LLC, DAVID R. BENNETT, and DAVID W. SPENCE agreed to repay, the sum of $2,000,000.00 to Plaintiffs as evidenced by a Promissory Note ("Note") dated January 11, 2008 and attached as Exhibit 8.

52.     In accordance with the Ala. Code §8-8-1, Defendants agreed by written contract to an interest rate on the loan of eight (8) percent per annum.

53.     Additionally, Defendants agreed to pay any and all costs of collection, including, without limitation, reasonable attorney's fees, in the event of foreclosure of the mortgage securing the Note.

54.     On or about January 11, 2008, Defendants Bennett and Spence, executed a guaranty ("Guaranty") in which they unconditionally guaranteed repayment of the loan and fulfillment of all other obligations owed to Plaintiffs. See "Guaranty" attached as Exhibit 9.

55.    On or about January 14, 2008, Defendants gave Plaintiffs  a mortgage (the "Mortgage") as security for the Note.  The Mortgage was recorded in the State of Alabama with the Office of the Judge of Probate of Colbert County in Real Property Book 2008 05, at Pages 793-813.  See "Mortgage" attached as Exhibit 10.

56.    Under the terms of the Note, Defendant BRAL Holdings, LLC, was required to pay "all outstanding principal, accrued unpaid interest, and all other amounts outstanding under this Note," within one hundred eighty (180) days from the signing of the Note, which was July 9, 2008.

57.    On or about July 9, 2008, Defendant BRAL Holdings, LLC failed to pay the amounts due under the Note and  Defendants Bennett and Spence failed to pay pursuant to their personal guaranty.

58.    Defendants breached and defaulted under the terms of the Note, Guaranty, and Mortgage by failing to pay the loan and fulfilling all other obligations owed to Plaintiffs on July 9, 2008.

59.    On January 16, 2009, previous counsel for Plaintiffs published notice of a foreclosure sale pursuant to the Mortgage the *Colbert County Reporter* on January 16, 2009, January 23, and the final publication was made on January 30, 2009.

60.    The public sale was originally scheduled  on February 9, 2009 and was continued to April 2, 2009 by notice in the March 6, 2009 issue of the *Colbert County Reporter*.

61.    The sale was again continued on April 2, 2009 and rescheduled for April 30, 2009 by notice in the *Colbert County Reporter* on April 24, 2009.

10

62.     On April 30, 2009, a public sale was held and Parcel 1 was sold to Plaintiffs for the sum of $400,000.00, Parcel 2 was sold to Plaintiffs for the sum of $950,000.00, and Parcel 3 was sold to Plaintiffs for the sum of $1,000,000.00

63.     On May 19, 2009, an agent for the Plaintiffs executed and recorded a Mortgage Foreclosure Deed in the Office of the Judge of Probate of Colbert County in Real Property Book 2009 05, at Pages 13597-13601. See "Mortgage Foreclosure Deed" attached as Exhibit 11.

64.     As of April 30, 2009, Plaintiffs were owed $2,713,687.89 in principal, accrued interest, and foreclosure costs.

65.     Despite the existence of the Glimcher LOI, Defendants' sale of the 102 Maryland Street property to Glimcher for $1,400,000.00 never went through.

66.     Furthermore, when Plaintiffs attempted to recover some of their costs by collecting on the Wal-Mart Lease, they discovered that the lease was nonexistent and otherwise uncollectable.

67.     Additionally, since foreclosure on the parcels, Plaintiffs discovered that Parcels 2 and 3 contain serious environmental issues, the extent of which is not at this time known.

## FIRST CAUSE OF ACTION
### (Breach of Contract)

68.     Plaintiffs hereby incorporate and re-allege all preceding paragraphs as though fully set forth herein.

11

69.     On January 11, 2008, Plaintiffs and Defendants entered into a valid contract as evidenced by recording a Note, Mortgage as security for said Note, and Guaranty as an unconditional guarantee of repayment attached as Exhibits 8, 9, and 10.

70.     Consideration was given by Plaintiffs for Defendants' promise to repay the loan along with a contractually agreed-upon rate of interest.

71.     In accordance with the Ala. Code §8-8-1, Defendants agreed by written contract to an interest rate on the loan of eight (8) percent per annum. See "Note," attached as Exhibit 8.

72.     Plaintiffs fully performed under the terms and conditions of the Note when they made the loan to Defendants.

73.     On July 9, 2008 when the Note became due, Defendants breached the terms and conditions of the contract by failing to repay the loan on the prescribed Maturity Date and fulfill all their obligations owed to Plaintiffs.

74.     Defendants Bennett and Spence failed to pay the Note pursuant to their personal guaranty.

75.     Defendants have made no attempts to cure their breach and Plaintiffs have still not been paid.

76.     As a result of Defendants' actions, Plaintiffs sustained damages which they claim in excess of $2,000,000.00, but which amount will be determined at the time of trial.

77.     As a result of Defendants' actions, it has become necessary for Plaintiffs to retain the services of an attorney to prosecute the claims herein and Plaintiffs are entitled to and claim any and all such expenses including, without limitation, all attorney's fees and costs.

12

## SECOND CAUSE OF ACTION
### (Declaratory Relief)

78.    Plaintiffs hereby incorporate and re-allege all preceding paragraphs as though fully set forth herein.

79.    Under Ala. Code §35-10-9, "All sales of real estate, made under powers contained in mortgages or deeds of trust contrary to the provisions of this article, shall be null and void, notwithstanding any agreement or stipulation to the contrary."

80.    Pursuant to Section 13.1 of the Mortgage, upon default, Private Capital Group was to mail a copy of the Notice of Default and Notice of Sale to BRAL Holdings at its 102 Maryland Street, Tuscumbia, Alabama 35674 address. See Exhibit 10.

81.    Instead, Plaintiffs published written notice of the Foreclosure sale in the *Colbert County Reporter* on January 16, January 23, and January 30, 2009.

82.    The public sale was postponed on February 9, 2009 and was continued to April 2, 2009 by notice in the March 6, 2009 issue of the *Colbert County Reporter*.

83.    The sale was continued on April 2, 2009 and rescheduled for April 30, 2009 by notice in the *Colbert County Reporter* again on April 24, 2009.

84.    However, at no time did Plaintiffs provide BRAL Holdings with written notice as required under the Mortgage.

85.    On April 30, 2009, a foreclosure sale was held and Parcel 1 was sold to Plaintiffs for the sum of $400,000.00, Parcel 2 was sold to Plaintiffs for the sum of $950,000.00, and Parcel 3 was sold to Plaintiffs for the sum of $1,000,000.00

13

86.    Failure to properly notice all parties in accord with the Mortgage invalidates the foreclosure sale held on April 30, 2009 under Ala. Code §§35-10-8 and 35-10-9.

87.    Moreover, pursuant to Section 10.3 of the Mortgage, the sheriff was to "execute and deliver to the purchaser a deed conveying the property so sold."

88.    No deed was ever executed or delivered by the sheriff, but instead handled by an agent for the Plaintiffs.

89.    Failure to deliver the deed as required under the Mortgage invalidates the foreclosure sale held on April 30, 2009 under Ala. Code §§35-10-8 and 35-10-9.

90.    On July 28, 2006, De Nora Tech entered into a purchase and sale agreement with BRAL Holdings to purchase the property located at 102 Maryland Street as described in detail above.    As part of the agreement, BRAL agreed to undertake efforts at remediation of the environmental conditions on the property to prevent De Nora Tech from incurring liability for failure to follow Alabama Department of Environmental Management's ("ADEM") orders. BRAL failed to do so, and De Nora Tech subsequently brought suit requesting a return of the property based upon BRAL's breach.    On December 28, 2008, a court order vested title to the property back in De Nora Tech and removed BRAL Holdings' interest. See "Court Order" attached as Exhibit 12.

91.    De Nora Tech, the actual owner of the property, was never put on notice of the foreclosure sale held on April 30, 2009.

92.    Pursuant to Section Ala. Code §6-6-221, Plaintiff requests that this Court rule that the April 30, 2009, foreclosure sale was void and that the parties hold their original ownership interests.

### THIRD CAUSE OF ACTION
### (Fraud)

93.    Plaintiffs hereby incorporate and re-allege all preceding paragraphs as though fully set forth herein.

94.    On or about December 13, 2007, Defendant Bennett on behalf of BRAL Holdings, LLC, approached PCG with a loan request in the amount of $2,000,000.00.

95.    In anticipation of such loan, Defendants represented they were the rightful owners of Parcel 1 located at 502 Washington Drive.

96.    Defendants also represented that Parcel 2 located at 102 Maryland Street was in the process of being purchased by NR Glimcher, LLC and Bennett provided Plaintiffs with a personal financial statement stating his net worth as $32,341,989.00.

97.    Defendants provided Plaintiffs with a recent appraisal of the 102 Maryland Street property which stated that the property was free of any "environmental hazards" and "no obvious signs of any environmental contamination [were] on the site."

98.    Defendants provided Plaintiffs with a recent appraisal of the 103 S. Atlanta Avenue property valuing the property at $1,500,000.00 and which failed to note any environmental issues on the land.

15

99.    Defendants provided Plaintiffs with a copy of a five (5) year lease of the 103 S. Atlanta Avenue property with Wal-Mart under which Bennett claimed to receive income in the amount of $20,000.00 per month.

100.    None of these representations were true and Plaintiffs have been contacted by Alabama Department of Environmental Management ("ADEM") numerous times regarding environmental issues on Parcels 2 and 3.

101.    Plaintiffs have also since discovered that Parcel 1 is currently owned and occupied by individuals unrelated to Defendants and that Defendants never rightfully owned the Parcel.

102.    Plaintiffs have also since discovered that the Wal-Mart lease was forged and was not in place at the time the loan was made despite Bennett's representations to the contrary.

103.    Defendants' false representations were material facts that led Plaintiffs to make the loan.

104.    At the time Defendants made these representations to Plaintiffs, Defendants were aware of the environmental issues existing on Parcels 2 and 3 in light of Defendants' recent purchase of the property from De Nora Tech.

105.    Defendants were also aware that the Wal-Mart lease was invalid and that he did not have the ability or intention to repay the loan.

106.    In reliance on the truthfulness of the appraisals, Bennett's financial statement, a potential purchaser, and the Wal-Mart lease, January 11, 2008, PCG facilitated and the Plaintiffs made the loan to Defendants.

16

107.   Plaintiffs' reliance on the above representations was justified and Plaintiffs had no reason to doubt the accuracy of a signed lease agreement and appraisal documents.

108.   As a result of Defendants' fraudulent actions, Plaintiffs were never repaid the two (2) million dollars loaned to BRAL Holdings.

109.   Moreover, Plaintiffs foreclosed on the subject properties without full awareness of the environmental issues existing on Parcels 2 and 3, and is being pursued by ADEM for payment of cleanup bonds in excess of $400,000.00.

110.   As a result of Defendants' actions, Plaintiffs have sustained damages which they claim in excess of $2,000,000.00, but which amount will be determined at the time of trial.

111.   As a result of Defendants' actions, it has become necessary for Plaintiffs to retain the services of an attorney to prosecute the claims herein and Plaintiffs are entitled to and claim any and all expenses including, without limitation, all attorney's fees and costs.

## FOURTH CAUSE OF ACTION
### (Fraudulent Misrepresentation)

112.   Plaintiffs hereby incorporate and re-allege all preceding paragraphs as though fully set forth herein.

113.   Defendants represented to Plaintiffs that they were the rightful owners of Parcels 1, 2, and 3 and that all Parcels were free of environmental issues, and provided Plaintiffs with appraisals also stating the same.

17

114.    Defendants further represented that Parcel 2 was in the process of being purchased for $1,400,000.00 and receipt of those funds by Bennett would be used to repay Plaintiffs.

115.    Defendants represented that Bennett's net worth was $32,341,989.00 and that a five-year lease with Wal-Mart was currently in place on Parcel 3 and brought in $20,000.00 per month.

116.    None of the above representations were true.

117.    Defendants' false representations were material facts concerning Bennett's financial well-being and the value of the properties and were the basis for Plaintiffs making the loan.

118.    At the time Defendants made these representations to Plaintiffs, were fully aware that environmental issues existed on the property, that the Wal-Mart lease was non-existent, and that they did not have the ability or intention to repay the loan.

119.    Defendants knew Plaintiffs would reasonably rely upon these representations in making the loan and Plaintiffs had no reason to doubt the accuracy of a signed lease agreement and appraisal documents.

120.    As a result of Defendants' fraudulent misrepresentations, Plaintiffs were never repaid the two (2) million dollars loaned to BRAL Holdings.

121.    Moreover, Plaintiffs foreclosed on the subject properties without full awareness of the environmental issues existing on Parcels 2 and 3, and is being pursued by ADEM for payment of cleanup bonds in excess of $400,000.00.

122.    As a result of Defendants' actions, Plaintiffs have sustained damages which are claimed in excess of $2,000,000.00, but which amount will be determined at the time of trial.

123.    As a result of Defendants' actions, it has become necessary for Plaintiffs to retain the services of an attorney to prosecute the claims herein and Plaintiffs are entitled to and claim any and all expenses including, without limitation, all attorney's fees and costs.

## FIFTH CAUSE OF ACTION
### (Fraudulent Non-Disclosure)

124.    Plaintiffs hereby incorporate and re-allege all preceding paragraphs as though fully set forth herein.

125.    As a borrower and pursuant to the terms of the loan agreement, Defendants were obligated to truthfully and accurately disclose the environmental condition of Parcels 2 and 3 used as collateral for the loan, because there is nothing to indicate that Plaintiffs would have been put on notice of such serious defects in the property or that the environmental defects could have been discovered through reasonable due diligence on the part of Plaintiffs.

126.    Defendants knew or should have known that the warehouses on Parcels 2 and 3 were subject to environmental issues and not in good condition and repair since they were paid to take possession of the properties by De Nora Tech.

127.    Defendants failed to disclose and purposely concealed their knowledge of the significant environmental issues existing on the two (2) parcels by providing Plaintiffs with falsified appraisals and their own false representations.

19

128. Defendants knew that Plaintiffs would reasonably rely upon these representations in making the loan.

129. In reliance on the truthfulness of the appraisals and Defendants' failure to disclose the environmental issues existing on the property, Plaintiffs loaned $2,000,000.00 to Defendants.

130. Following Defendants' failure to repay the loan, Plaintiffs foreclosed on the subject properties without full awareness of the environmental issues existing on the property and is being pursued by ADEM for payment of cleanup bonds in excess of $400,000.00.

131. Moreover, As a result of Defendants' actions, Plaintiffs have sustained damages and claim in excess of $2,000,000.00, but which amount will be determined at the time of trial.

132. As a result of Defendants' actions, it has become necessary for Plaintiffs to retain the services of an attorney to prosecute the claims herein and Plaintiffs are entitled to and claim any and all expenses including, without limitation, all attorney's fees and costs.

## SIXTH CAUSE OF ACTION
### (Conversion)

133. Plaintiffs hereby incorporate and re-allege all preceding paragraphs as though fully set forth herein.

134. Defendants Bennett and Spence wrongfully exercised dominion and control over approximately $2,000,000.00 from Plaintiffs, for their own use and without lawful justification.

135. The funds loaned by Plaintiffs were to be used by Defendant BRAL Holdings, LLC, to further a real estate project in the area and were not to be used to compensate Bennett or Spence or to be loaned to entities controlled by Defendants for their own benefit.

20

136. Upon information and belief, Defendants used the funds obtained from Plaintiffs for their own personal use and pecuniary gain.

137. Defendants' exercise of dominion and control over funds Plaintiffs loaned and failure to repay those debts deprived Plaintiffs of their rightful use and entitlement to immediate possession of the funds.

138. As a result of Defendants' actions, Plaintiffs have sustained damages which they claim in excess of $2,000,000.00, but which amount will be determined at the time of trial.

139. As a result of Defendants' actions, it has become necessary for Plaintiffs to retain the services of an attorney to prosecute the claims herein and Plaintiffs are entitled to and claim any and all expenses including, without limitation, all attorney's fees and costs.

## SEVENTH CAUSE OF ACTION
### (Civil Conspiracy)

140. Plaintiffs hereby incorporate and re-allege all preceding paragraphs as though fully set forth herein.

141. Defendants are a combination of two or more persons.

142. A civil conspiracy requires a combination of at least two individuals "to accomplish a lawful end by unlawful means." *Drill Parts & Serv. Co. v. Joy Manufacturing Co.*, 619 So.2d 1280 (Ala. 1993).

143. Upon information and belief, Defendants had an object to be accomplished in inducing Plaintiffs into making the loan, based upon material misstatements on financial statements and inflated and inaccurate appraisals for the purpose of financial gain.

144. Upon information and belief, Defendants had a meeting of the minds on the object or course of action.

145. BRAL Holdings, LLC, David Bennett, and David Spence, engaged in multiple transactions similar in form and substance to the transactions at issue in this case.

146. Upon information and belief, De Nora Tech paid Defendant BRAL Holdings to take Parcel 2 located at 102 Maryland Street off their hands because the property was essentially valueless as a result of the associated environmental issues.

147. Upon information and belief, BRAL Holdings, LLC, David Bennett, and David Spence, obtained Parcel 1 located at 502 Washington Ave. fraudulently or unlawfully and subsequently used the property as collateral for the loan in this case.

148. Upon information and belief, Defendants intended to use a fraudulent appraisal and sham lease to withdraw as much as possible in funding from Plaintiffs.

149. Upon information and belief, Defendants intended to distribute and actually distributed, loan proceeds among themselves in a manner that was inconsistent with the terms of the Note.

150. Upon information and belief, Defendants conspired to commit the torts and civil violations above with the purpose of obtaining as much funding as possible from Plaintiffs for their own pecuniary gain.

22

151.    Upon information and belief, Defendants have worked together on other transactions similar in nature to the transaction entered into with Plaintiffs (e.g. use of valueless property as collateral with no intentions of repaying the associated loans).

152.    Based upon information and belief, many of the other similar transactions included inflated appraisals and falsified personal financial statements similar in nature to the inflated appraisals and falsified personal financial statement included in the transactions between Defendants and Plaintiffs in the instant case.

153.    As a result, any judgment awarded against one Defendant should be awarded against all others.

154.    As a result of Defendants' actions, Plaintiffs have sustained damages which they claim in excess of $2,000,000.00, but which amount will be determined at the time of trial.

155.    As a result of Defendants' actions, it has become necessary for Plaintiffs to retain the services of an attorney to prosecute the claims herein and Plaintiffs are entitled to and claim any and all expenses including, without limitation, all attorney's fees and costs.

## EIGHTH CAUSE OF ACTION
### (Breach of Implied Covenant of Good Faith and Fair Dealing)

156.    Plaintiffs hereby incorporate and re-allege all preceding paragraphs as though fully set forth herein.

157.   On January 11, 2008, Plaintiffs and Defendants entered into a contract as evidenced by recording a Note, Mortgage as security for said Note, and Guaranty as an unconditional guarantee of repayment.

158.   In every contract there is an implied covenant of good faith and fair dealing designed to ensure that "a contracting party shall not try to deprive the other of the consideration for which he bargained." *Hoffman-La Roche, Inc. v. Campbell*, 512 So.2d 725, 738 (Ala. 1987).

159.   Defendants breached this duty by: (i) falsely representing Bennett's net worth, (ii) falsely representing NR Glimcher, LLC's expressed intentions to purchase the warehouse property at 102 Maryland St. for $1,400,000.00, (iii) falsely representing that warehouse at 103 South Atlanta Ave., Sheffield, Alabama 35660 was currently leased to Wal-Mart for $20,000.00 per month, (iv) providing inaccurate property appraisals, (v) failing to disclose the material misstatements intentionally included in the loan (e.g., inflating Bennett's net worth and monthly income and real value of the properties), and (vi) failing to disclose the environmental condition of the warehouse properties or Parcels 2 and 3.

160.   The actions taken by Defendants were intentionally made in order to make Defendants' financial position look stronger, thereby increasing the loan amount Defendants would qualify for, and consequentially increasing the amount of profits that would be distributed to Defendants through the making of the loan.

161.   Plaintiffs have incurred general and consequential damages as a result of Defendants' breach which they claim in excess of $2,000,000.00, the amount of which will be determined at trial.

24

162.     As a result of Defendants' actions, it has become necessary for Plaintiffs to retain the services of an attorney to prosecute the claims herein and Plaintiffs are entitled to and claim any and all expenses including, without limitation, all attorney's fees and costs.

## NINTH CAUSE OF ACTION
### (Unjust Enrichment)

163.     Plaintiffs hereby incorporate and re-allege all preceding paragraphs as though fully set forth herein.

164.     Defendants made certain representations to Plaintiffs in order to induce them to execute the $2,000,000.00 loan, including the following: (i) Defendant Bennett had a stated net worth of $32,341.989.00, (ii) NR Glimcher, LLC intended to purchase the warehouse property at 102 Maryland St. for $1,400,000.00, (iii) the warehouse at 103 South Atlanta Ave. was currently leased to Wal-Mart for $20,000.00 per month, (iv) the warehouse properties were in good repair and not subject to any hidden defects or environmental issues, and (v) the loan collateralized by the properties was not more than 53% of the fair market value of the properties.

165.     The Defendants acted willfully and intentionally, and with the intent to defraud Plaintiffs into entering into the loan transaction, and thereby obtained approximately $2,000,000.00 from Plaintiffs.

166.     Defendants knew and/or appreciated the benefit conferred upon them by Plaintiffs.

25

167.    Defendants' retention of the loan funds under such circumstances would make it inequitable for them to retain the benefit without payment of its value.

168.    Plaintiffs have incurred general and consequential damages which they claim as a result of Defendants' breach in excess of $2,000,000.00, the amount of which will be determined at trial.

169.    As a result of Defendants' actions, it has become necessary for Plaintiffs to retain the services of an attorney to prosecute the claims herein and Plaintiffs are entitled to and claim any and all expenses including, without limitation, all attorney's fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray as follows:

1.    For a declaration of ownership rights in the property described in the Mortgage, rescission of the Mortgage Foreclosure Deed, and immediate vesting of ownership of said property in Defendants subject to Plaintiffs rights under the Mortgage;

2.    For general damages in excess of $2,000,000.00, but in an amount to be determined at trial;

26

3. For punitive damages in an amount to be determined at trial;

4. For an award of attorney's fees and costs of suit as called for in the Note; and

5. For such other and further relief as this Court deems just, equitable, and proper.

Respectfully submitted this 3rd day of June, 2010.

CHARLES R. JOHANSON III (JOH013)
Attorney for Plaintiffs

**Of Counsel:**
ENGEL, HAIRSTON & JOHANSON P.C.
4th Floor 109 North 20th Street
P.O. Box 11405
Birmingham, Al 35202
Telephone: (205) 328 - 4600
Telefax: (205) 328 - 4698