## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHWESTERN DIVISION

**PRIVATE CAPITAL GROUP, INC.,** )
*et al.*,                        )
                                 )
    **Plaintiffs,**            )
                                 )
vs.                              )    Civil Action No. CV-10-S-1398-NW
                                 )
**BRAL HOLDINGS, LLC,** *et al.*,)
                                 )
    **Defendants.**           )

### MEMORANDUM OPINION AND ORDER

This action is before the court on the motion by non-party De Nora Tech, LLC ("De Nora") to intervene as a plaintiff,[1] and the "Stipulation and Order of Dismissal" filed jointly by all of the present parties.[2] Upon consideration of the motion, stipulation, pleadings, briefs, and oral arguments of counsel, the court concludes that the stipulation of dismissal jointly executed by the present plaintiffs and defendants should be rejected, and De Nora should be allowed to intervene

### I. RELEVANT ALLEGATIONS OF PLAINTIFFS' COMPLAINT

This action was commenced on June 4, 2010, by a total of fifty-five plaintiffs — a group comprised of eleven entities and forty-four individuals, identified as follows: Private Capital Group, Inc.; NMB Investments, Inc.; Michael Robinson;

---

[1] Doc. no. 7.
[2] Doc. no. 11.

Jared and Burgandy Rupp; Joshua and Jalee Scott; S & K Family Limited Partnership; Robert and Vickie Nelson; Ronald and Gayle Ball; Sandy Walters; Del Rio Investments; Mark Amakasu; Bradley and Leslie Call; Bryan and Jana Call; Michael and Julita Guillen; Julie Johnson; Craig and Michelle Labrum; Shane and Carol Lamb; Beth Black; Aquilla Ventures, LLC; David and Amy Bitter; Michael and Jan Busby; Kevin and Lou Ann Heaton; James and Tina Moore; Kapua Sprout; David and Kathy Walton; Placitas Gold, LLC; James and Elizabeth Knight; Michael and Lori Dischbein; Martha Sappington; Zane and Lisa Westover; Frazier Family Trust; Vivian Brown; IRA4SC, LLC; Snyder Investments; Frank and Diane Torrell; Ash Brook Properties, LLC; and Call Auto Enterprises, Inc. (collectively, "plaintiffs"). The defendants named in plaintiffs' complaint were BRAL Holdings, LLC, David R. Bennett, and David W. Spence.

Plaintiffs assert claims for breach of contract, declaratory relief, fraud, fraudulent misrepresentation, fraudulent non-disclosure, conversion, civil conspiracy, breach of an implied covenant of good faith and fair dealing, and unjust enrichment.[3] All of plaintiffs' claims arise out of defendants' alleged failure to pay on a loan plaintiffs extended to defendants.

---

[3] *See* doc. no. 1 (complaint). Federal jurisdiction is based upon satisfaction of the requirements of the diversity statute, 28 U.S.C. § 1332, as the parties are of diverse citizenship and the amount in controversy exceeds $75,000.00. *See id.* at ¶ 41.

Specifically, on December 14, 2007, plaintiffs and defendants executed a Letter of Intent setting forth the terms of a prospective agreement whereby plaintiffs promised to lend defendants Two Million Dollars ($2,000,000.00), secured by the following collateral: (1) "Parcel 1," located at 502 Washington Drive, in Muscle Shoals, Alabama; (2) "Parcel 2," located at 102 Maryland Street, in Tuscumbia, Alabama; and (3) "Parcel 3," located at 102 S. Atlanta Avenue, in Sheffield, Alabama.[4]

> In December 2007, [defendant David R.] Bennett provided Plaintiffs with a recent appraisal of the 102 Maryland Street property ["Parcel 2" in Tuscumbia, Alabama, that had been] issued on June 12, 2007, valuing the property at $1,400,000.00[,] and stating that "the appraisers are not aware of *any known source of pollution or environmental hazards in the area* nor any apparent uses or developments in the area which would adversely affect its marketability" and "*no obvious signs of any environmental contamination* [*were*] *on the site*."[5]

In reliance on this and other representations, plaintiff Private Capital Group, Inc., facilitated a transaction among the other plaintiffs and defendants whereby plaintiffs agreed to loan, and defendants agreed to repay, the sum of $2,000,000, together with accumulated interest calculated at the rate of eight percent per annum, as evidenced by a Promissory Note executed on January 11, 2008 ("the Note").[6]

---

[4]*Id.* at ¶ 44.
[5]*Id.* at ¶ 48 (first three bracketed alterations and italicized emphasis added).
[6]*Id.* at ¶¶ 51-52.

Defendants David R. Bennett and David W. Spence executed a personal guaranty agreement ("the Guaranty") on January 11, 2008, by the terms of which they unconditionally guaranteed repayment of the loan and fulfillment of all other obligations owed to plaintiffs.[7] All three defendants — Bennett, Spence, and BRAL Holdings, LLC — also executed a mortgage as security for the loan ("the Mortgage").[8]

In July of 2008, defendants breached their obligations under the Note, Guaranty, and Mortgage by failing to pay all amounts due under the Note.[9] Plaintiffs published notice of a foreclosure sale pursuant to the Mortgage in the *Colbert County Reporter* on January 16, January 23, January 30, March 6, and April 24, 2009. The public sale was held on April 30, 2009. As a result of the sale, Parcel 1 was sold to plaintiffs for $400,000; Parcel 2 was sold to Plaintiffs for $950,000; and Parcel 3 was sold to Plaintiffs for $1,000,000.[10] On May 19, 2009, plaintiffs executed and recorded a Mortgage Foreclosure Deed in the Office of the Judge of Probate of Colbert County, Alabama.[11] Allegedly, it was only after the foreclosure sale that plaintiffs discovered that Parcel 2 in Tuscumbia, Alabama was fraught with "serious

---

[7] Complaint, at ¶ 54.
[8] *Id.* at ¶ 55.
[9] *Id.* at ¶¶ 56-57.
[10] *Id.* at ¶¶ 59-62.
[11] *Id.* at ¶ 63.

environmental issues."[12]

The cause of action in plaintiffs' complaint that is most relevant to DeNora's motion to intervene is found in Count Two: plaintiffs' request for declaratory relief. In that count, plaintiffs make the following statements:

> 79. Under Ala. Code § 35-10-9, "All sales of real estate, made under powers contained in mortgages or deeds of trust contrary to the provisions of this article, shall be null and void, notwithstanding any agreement or stipulation to the contrary."
>
> 80. Pursuant to Section 13.1 of the Mortgage, upon default, Private Capital Group [one of the plaintiffs in this action] was to mail a copy of the Notice of Default and Notice of Sale to BRAL Holdings at its 102 Maryland Street, Tuscumbia, Alabama 35674 address. . . .
>
> 81. Instead, Plaintiffs published written notice of the Foreclosure sale in the *Colbert County Reporter* on January 16, January 23, and January 30, 2009.
>
> 82. The public sale was postponed on February 9, 2009 and was continued to April 2, 2009 by notice in the March 6, 2009 issue of the *Colbert County Reporter*.
>
> 83. The sale was continued on April 2, 2009 and rescheduled for April 30, 2009 by notice in the *Colbert County Reporter* again on April 24, 2009.
>
> 84. However, at no time did Plaintiffs provide BRAL Holdings with written notice as required under the Mortgage.
>
> 85. On April 30, 2009, a foreclosure sale was held and Parcel 1 was sold to Plaintiffs for the sum of $400,000.00, Parcel 2 was sold to Plaintiffs for the sum of $950,000.00, and Parcel 3 was sold to Plaintiffs

---

[12]Complaint, at ¶ 67.

for the sum of $1,000,000.00.

86. Failure to properly notice all parties in accord with the Mortgage invalidates the foreclosure sale held on April 30, 2009 under Ala. Code §§ 35-10-8 and 35-10-9.[13]

87. Moreover, pursuant to Section 10.3 of the Mortgage, the sheriff was to "execute and deliver to the purchaser a deed conveying the property so sold."

88. No deed was ever executed or delivered by the sheriff, but instead handled by an agent for the Plaintiffs.

89. Failure to deliver the deed as required under the Mortgage invalidates the foreclosure sale held on April 30, 2009 under Ala. Code §§ 35-10-8 and 35-10-9.

90. On July 28, 2006, De Nora Tech entered into a purchase and sale agreement with BRAL Holdings to purchase the property located at 102 Maryland Street as described in detail above. As part of the agreement, BRAL agreed to undertake efforts at remediation of the environmental conditions on the property to prevent De Nora Tech from

---

[13]Alabama Code § 35-10-8, which bears the heading "How notice of sale given," states:

Notice of said sale shall be given in the manner provided in such mortgage or deed of trust or in this Code in the county where the mortgagor resides and the land, or a part thereof, is located; but, if said mortgagor does not reside in the county where the land or any part thereof is located, then such notice must be published in the county where said land, or any material part thereof, is located; provided, that notice of all sales under powers of sale contained in mortgages and deeds of trust executed after July 1, 1936, where the amount secured is $500.00 or more, shall be given by publication once a week for three successive weeks in some newspaper published in the county in which such land or any portion thereof is situated, and said notice of sale must give the time, place and terms of said sale, together with a description of the property to be sold.

The following section provides that "[a]ll sales of real estate, made under powers contained in mortgages or deeds of trust contrary to the provisions of this article, shall be null and void, notwithstanding any agreement or stipulation to the contrary." Ala. Code § 35-10-9 (1975).

incurring liability for failure to follow Alabama Department of Environmental Management's ("ADEM") orders. BRAL failed to do so, and De Nora Tech subsequently brought suit requesting a return of the property based upon BRAL's breach. On December 28, 2008, a court order vested title to the property back in De Nora Tech and removed BRAL Holdings' interest. . . .

> 91.   De Nora Tech, *the actual owner of the property*, was never put on notice of the foreclosure sale held on April 30, 2009.
>
> 92.   Pursuant to Section Ala. Code § 6-6-221 [sic], Plaintiff requests [sic] that this Court rule that the April 30, 2009, foreclosure sale was void and that the parties hold their original ownership interests.[14]

Plaintiffs also allege that defendants represented that Parcel 2 "was free of any 'environmental hazards' and 'no obvious signs of any environmental contamination [were] on the site,'"[15] but that representation was false because plaintiffs "have been contacted by Alabama Department of Environmental Management ("ADEM") numerous times regarding environmental issues" on the parcel.[16] "At the time Defendants made these representations to Plaintiffs, Defendants were aware of the environmental issues existing on Parcels 2 and 3 in light of Defendants' recent purchase of the property from De Nora Tech."[17] Plaintiffs relied upon defendants'

---

[14]Complaint, at ¶¶ 79-92 (emphasis supplied).
[15]*Id.* at ¶ 97.
[16]*Id.* at ¶ 100.
[17]*Id.* at ¶ 104.

7

misrepresentations in agreeing to make the loan to defendants,[18] and they have been damaged because they were never repaid the $2,000,000.00 owed them by defendants.[19] "Moreover, Plaintiffs foreclosed on the subject properties without full awareness of the environmental issues existing on Parcels 2 and 3, and is being pursued by ADEM for payment of cleanup bonds in excess of $400,000.00."[20]

## II. PROPOSED STIPULATION OF DISMISSAL

Plaintiffs and defendants filed a "Stipulation and Order of Dismissal" on September 30, 2010.[21] They "agree and stipulate" that defendants defaulted on their loan from plaintiffs, and that a foreclosure sale was held in a commercially unreasonable manner.[22] They also "agree to a rescission of the Mortgage Foreclosure Deed and immediate vesting of ownership of the properties in the rightful owners of the Property prior to the foreclosure."[23] Based on their agreement, they request the court to enter an order that states the following:

> 1. Defendants pledged three (3) parcels of property as collateral for the agreement, specifically: (1) Parcel 1 located at 502 Washington Drive, Muscle Shoals, AL 35661; (2) Parcel 2 located at

---

[18]*Id.* at ¶ 103.

[19]Complaint, at ¶ 108.

[20]*Id.* at ¶ 109. Plaintiffs also allege that defendants made certain other misrepresentations that are not relevant to the resolution of the instant motion.

[21]Doc. no. 11.

[22]*Id.* at ¶¶ 1-2.

[23]*Id.* at ¶ 4.

102 Maryland Street, Tuscumbia, AL 35674; and (3) Parcel 3 located at 103 S. Atlanta Avenue, Sheffield, AL 35660 (the "Property").

2. Based on the parties' stipulation and the commercial unreasonability of the foreclosure sale, the Mortgage Foreclosure Deed recorded in the Office of the Judge of Probate of Colbert County in Real Property Book 2009 05 at Pages 12597-13601, is hereby rescinded and ownership of the Property is immediately vested in the rightful owners of the Property prior to the foreclosure.

3. The liens held by Plaintiffs on the properties shall remain in full force until the separate settlement agreement between the parties is effectuated and all payments are made by Defendants in full.

4. Full consideration was given for Defendants' agreement to these terms as is spelled out more specifically in a separate settlement agreement entered into by the parties.

5. The above-styled mater is hereby dismissed with prejudice.[24]

### III. MOTION TO INTERVENE AND PROPOSED COMPLAINT IN INTERVENTION BY NON-PARTY DE NORA TECH, INC.

On September 16, 2010 — *i.e.,* some fourteen days *before* plaintiffs and defendants filed their proposed stipulation of dismissal — non-party De Nora Tech, Inc. ("De Nora") filed a motion to intervene as a plaintiff.[25] De Nora's proposed "Complaint in Intervention" — which names as defendants all of the present plaintiffs and defendants in this case — contains the following assertions:

---

[24]Doc. no. 11, Exhibit 1 (Proposed Order of Dismissal), at ¶¶ 1-5.
[25]Doc. no. 7.

48. On January 18, 1998, the Alabama Department of Environmental Management ("ADEM") issued a Post-Closure Permit to De Nora for the Tuscumbia Property [identified as "Parcel 2" in the present action].[26] To obtain the permit, ADEM required De Nora to make financial assurances to ensure performance of certain environmental obligations. De Nora provided a Letter of Credit to ADEM in the amount of $2,481,618.00.

49. On or about July 28, 2006, De Nora entered into a Purchase and Sale Agreement ("Agreement") with BRAL, whereby BRAL agreed to purchase the Tuscumbia Property and assume the environmental obligations and liabilities. As part of the Agreement, De Nora conveyed title to the Tuscumbia Property to BRAL and paid them a transfer fee of $700,000.00. In exchange, BRAL agreed to replace De Nora's Letter of Credit with ADEM and accept the environmental obligations required under the Post-Closure permit.[27]

BRAL failed to replace De Nora's Letter of Credit, however, and De Nora sued for breach of the Agreement. That case — *De Nora Tech, Inc. v. BRAL Holdings, LLC, et al.,* Civil Action NO. CV-08-J-672-NW — ended with the Agreement being rescinded, and BRAL being required to re-convey the Tuscumbia Property to De Nora.[28]

53. De Nora received a Warranty Deed for the Tuscumbia Property from BRAL and a Quitclaim Deed from Blue Ribbon Millworks (a BRAL related entity). De Nora recorded both of those deeds in the State of Alabama on February 25, 2009 with the Office of the Judge of Probate of Colbert County in Real Property Book 2009, at Pages 4981-4982 and 4984-4986, making De Nora the owner of the

---

[26] The "Tuscumbia Property" is the same parcel referred to *supra* as "Parcel 2."

[27] Doc. no. 7, Exhibit 1 (Proposed Complaint in Intervention), at ¶¶ 48-49.

[28] *Id.* at ¶¶ 50-52.

Tuscumbia Property once again. . . .

54.	On or about April 30, 2009, the PCG Parties *[the plaintiffs in the instant action]* foreclosed on the Tuscumbia Property and received a Foreclosure Deed. . . .

55.	Despite having received a Foreclosure Deed for the Tuscumbia Property, the PCG Parties have never put financial assurances in place for the Tuscumbia Property as required under ADEM's regulations. Nor have they assumed their tax obligations and other ownership responsibilities for the Tuscumbia Property. . . .

56.	On or about April 12, 2010, De Nora purchased the Tuscumbia Property at a tax sale held at the Colbert County Courthouse. . . .

57.	Currently, both De Nora and the PCG Parties have the same financial assurance and environmental cleanup obligations under ADEM's regulations.

58.	In compliance with those regulations, De Nora has continued to maintain the requisite financial assurances for the Tuscumbia property and has also agreed to a Consent Order with ADEM regarding the environmental monitoring, reporting and remediation obligations previously in place under the now expired Post-Closure Permit. . . .

59.	De Nora has incurred, and continues to incur, substantial costs and expenses to maintain its financial assurance with ADEM and to perform its cleanup obligations under the Consent Order.

60.	The cleanup obligations include, among other things, hiring an environmental consultant to develop and implement a site-wide remediation plan.

61.	The PCG Parties [*plaintiffs in the instant action*] have not entered into a Consent Order with ADEM for the Tuscumbia Property,

nor have they performed any of the required monitoring, reporting or remediation activities.

      62.    Instead, the PCG Parties brought this action and now seek to continue to avoid their financial assurance and cleanup obligations by asking this Court to void the foreclosure sale and reinstate their $500,000.00 mortgage lien on the Tuscumbia Property.[29]

De Nora requests a judgment declaring that

the foreclosure sale was valid, the $500,000.00 lien has been extinguished by operation of law and that the PCG Parties are the owners of the Tuscumbia Property, subject to the rights acquired by De Nora under its tax sale certificate. Alternatively, De Nora respectfully requests the Court rule that De Nora is the only owner of the Tuscumbia Property and that the real estate is not subject to any mortgage, lien, or rights of redemption, statutory or otherwise, by the PCG Parties.[30]

De Nora also claims that the "PCG Parties" (the plaintiffs in the present action) have been unjustly enriched because they have not fulfilled their own obligations to ADEM, but have enjoyed the benefit of De Nora's fulfillment of those obligations.[31]

Finally, De Nora alleges that "the PCG Parties" are obligated, pursuant to the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. § 6901 *et seq.*, to pay the costs of cleanup and attend to the cleanup of the Tuscumbia Property.

In short, De Nora requests intervention "as a plaintiff to protect its interest in the real property and assert claims against the PCG Parties for their failure to pay the

---

[29]*Id.* at ¶¶ 53-62.
[30]*Id.* at 12-13 (Prayer for Relief).
[31]*Id.* at ¶¶ 70-76.

cleanup costs, attend to the remediation of the Tuscumbia Property and comply with applicable state and federal environmental regulations."[32]

## IV. DISCUSSION

De Nora seeks to intervene pursuant to Federal Rule of Civil Procedure 24(a)(2), which states that,

> [o]n timely motion, the court *must* permit anyone to intervene who:
>
> . . . .
>
> (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Fed. R. Civ. P. 24(a)(2) (emphasis supplied). The Eleventh Circuit has held that,

> [t]o intervene of right under Rule 24(a)(2), a party must establish that "(1) his application to intervene is timely; (2) he has an interest relating to the property or transaction which is the subject of the action; (3) he is so situated that disposition of the action, as a practical matter, may impede or impair his ability to protect that interest; and (4) his interest is represented inadequately by the existing parties to the suit." *Chiles v. Thornburgh*, 865 F.2d 1197, 1213 (11th Cir. 1989) (citing *Athens Lumber Co. v. FEC*, 690 F.2d 1364, 1366 (11th Cir. 1982)).

*Fox v. Tyson Foods, Inc.,* 519 F.3d 1298, 1302-03 (11th Cir. 2008).

De Nora's interest in the property that is the subject matter of this action cannot be disputed. It is the owner of, or has at least acquired some sort of property interest

---

[32]*Id.* at ¶ 2.

13

in, "Parcel 2." As the purpose of the current litigation is to determine whether a foreclosure sale on Parcel 2 is valid, and whether plaintiffs should be allowed to retain a $500,000 lien on the property, it can reasonably be concluded that the disposition of the litigation, as a practical matter, will affect De Nora's ability to protect its ownership interest in the property. Furthermore, the existing parties to the case cannot reasonably be expected to adequately protect De Nora's interests. As DeNora's motion to intervene and Complaint in Intervention make clear, De Nora's interests are opposed to the interests of the present parties.

The only requirement that can reasonably be disputed is whether the motion to intervene was "timely" filed.

> A district court must consider four factors in assessing timeliness, namely (1) the length of time during which the would-be intervenor knew or reasonably should have known of his interest in the case before he petitioned for leave to intervene; (2) the extent of prejudice to the existing parties as a result of the would-be intervenor's failure to apply as soon as he knew or reasonably should have known of his interest; (3) the extent of prejudice to the would-be intervenor if his petition is denied; and (4) the existence of unusual circumstances militating either for or against a determination that the application is timely.

*U.S. v. Jefferson County,* 720 F.2d 1511, 1516 (11th Cir. 1983) (citing *Stallworth v. Monsanto Co.,* 558 F.2d 267, 272 (5th Cir. 1977)).[33] Plaintiffs and De Nora appear

---

[33]In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

to have slightly — yet fundamentally — different interpretations of the first factor. Plaintiffs suggest that De Nora was required to intervene in a timely manner after it discovered its interest in the subject property. According to plaintiffs, De Nora either knew or should have known about plaintiffs' interest in the property by simply examining the public record after the April 30, 2009 foreclosure sale, and De Nora should have expressed its interest in recovering from plaintiffs for the costs of environmental cleanup at that time. Plaintiffs cite no authority to support this assertion, however, and the assertion is contrary to the plain language of the Eleventh Circuit's decision. The test requires evaluation of how long the would-be intervenor knew of his interest *in the case*, not how long he knew of his interest in the *subject matter* of the case. This case was filed on June 4, 2010. De Nora moved to intervene on September 16, 2010, just over three months later. At that time, no defendant had yet filed an answer to plaintiffs' complaint. In fact, the record reflects that service had not been effected on any defendant prior to September 16. Because the litigation had barely begun when De Nora moved to intervene, De Nora did not wait an unreasonably long amount of time before filing the motion. Furthermore, because De Nora did not unduly delay in filing the petition to intervene, neither plaintiffs nor defendants have suffered any prejudice.[34]  On the contrary, De Nora faces a

---

[34]Plaintiffs' rights may be adversely affected by De Nora's presence in this litigation, but that is not the same inquiry as the level of prejudice suffered as a result of delay in bringing the motion

significant risk of suffering prejudice if various interests in a parcel of its property are adjudicated without its input. Finally, the only "extraordinary circumstance" potentially militating for or against a finding of timeliness is the existence of a settlement agreement between plaintiffs and defendants. Plaintiffs point out that the Eleventh Circuit has "denied a motion to intervene following a settlement agreement entered into by the parties."[35] *See Campbell v. Hall-Mark Electronics Corp.,* 808 F.2d 775 (11th Cir. 1987). While that is a true statement, the *Campbell* case is distinguishable. In *Campbell,* the party seeking intervention had been intimately involved in the litigation process for more than a year, and had even participated in the settlement negotiations between the parties. *Campbell,* 808 F.2d at 778-79. Here, in contrast, the litigation had only barely begun when De Nora moved to intervene, and there is no indication that De Nora was even aware of the negotiations between the parties prior to their reaching an agreement. The court is not happy about having to reject a stipulation of the parties to dismiss a case, but that is the only just result here. Plaintiffs and defendants should not be able to enter into an agreement that will take on the force of a court order, when that agreement may adversely affect De Nora's rights without De Nora's input.

---

to intervene.

[35]Doc. no. 12, at 10.

## VI. CONCLUSION AND ORDERS

In consideration of the foregoing, the court concludes that De Nora has satisfied all requirements for intervening in this case as of right pursuant to Federal Rule of Civil Procedure 24(a).[36]  Accordingly, De Nora's motion to intervene is GRANTED.  The Clerk of Court is directed to detach De Nora's proposed Complaint in Intervention from the motion to intervene, file it, and docket it into the record.  The Stipulation of Dismissal entered into between plaintiffs and defendants is REJECTED.

DONE this 7th day of December, 2010.

_____
United States District Judge

---

[36] De Nora also claims that is entitled to permissive intervention pursuant to Federal Rule of Civil Procedure 24(b).  Because the court has concluded that De Nora is entitled to intervention of right, it need not consider De Nora's alternative argument.